[1] This is an action for adoption. Margaret Johnson is the natural mother of the child sought to be adopted. John Johnson is her stepfather. These facts were alleged in the petition, and it was further alleged that Diana Marie Siler is a girl of the age of six years, now residing with petitioners in Newton County, Missouri. Her natural father died about the 15th day of July, 1944. The petitioners were married on the 4th day of January, 1946, and have lived together continuously from that time as husband and wife. John Johnson had for more than 9 months last past shared with Margaret the legal and lawful custody of the child, and that he as head of the family, had assumed responsibility for the support and maintenance of the child sharing with her mother the duties incident to her care and education with the consent and understanding of Margaret Johnson. John Johnson is gainfully employed, mentally and physically sound and is able to care for, maintain and educate said child, suitable in all respects for the adoption therein prayed for, that it would be best for the child that John Johnson adopt her and assume and maintain the position of a lawful father. Margaret joined in the petition for the purpose of expressly consenting to the adoption, asking the court to enter a decree of adoption so that John Johnson may hereafter share with Margaret all responsibility as a lawful parent of said child. *Page 380 
[2] An application was made for appointment of a guardian ad litem, one was appointed and qualified and he filed an answer admitting that the best interests of the child would be conserved by entering an immediate decree of adoption, admitted all the allegations of the petition but stating that the custody of John Johnson had been entered into and abided by without an order of the court sitting as a Juvenile Court, that no such consent had been asked for or given and that the matter was called to the court's attention for the sole purpose of getting it ruled upon. The guardian ad litem was of the opinion that the care and custody had been lawful and actual for more than nine months in accordance with the provisions of Section 9613, R.S. No. 1939, as amended, Mo. R.S.A. § 9613. The prayer was that the petition be dismissed because they had not previously obtained an order of the Probate Court.
[3] A reply to the answer of the guardian ad litem was filed, asserting that the custody of the minor child by the said John Johnson was lawful, that an immediate decree would be beneficial to the interests of the child because she was about to enter her first year of school, must furnish her birth certificate and that unless the adoption is decreed, upon entering school, she will be referred to by a name different to her parents, causing embarrassment and misunderstanding. Further, that the petitioner, John Johnson had business opportunities that might make it necessary for him, in the near future, to move from the State of Missouri.
[4] An investigation was made as to the fitness of the petitioners and as to the background not only of each of them but of the child and nothing was found detrimental to such adoption. In fact, the welfare worker of Newton County spoke of the petitioners, of the child and of its paternal and maternal background in the most glowing terms. It is practically conceded by everyone that petitioners are high class people and well qualified in every way. The court refused the adoption solely because John Johnson had not obtained the consent of the Juvenile Court of Newton County to assume custody of the child, Diana Marie Siler, more than nine months before the petition was filed.
[5] The only question before us is, under the facts in this case was it necessary to have procured that consent before filing the petition for adoption and obtaining the decree?
[6] We do not think such consent was necessary. The report of the Child Welfare Worker showed Margaret Johnson was the natural mother of the child, its natural father had been killed in a plane crash in July, 1944, while in the armed services. The child had lived constantly with its mother from the time of its birth to the filing of the petition for adoption. However, she had married John Johnson on the 4th day of January, 1946 and they had lived together thereafter, the child living with both of them. Johnson had treated the child with all the kindness and affection that he showed to his own children. Petitioners had two other children born of the marriage and the three had been raised in the household as if they all had the same father and mother, in fact, Diana Marie Siler did not know that John Johnson was not her natural father.
[7] The report closed: "There seemed to be no negative factors in this situation and we believe that the formal adoption will be merely legalizing of a happy relationship which has existed for more than three years."
[8] Section 9613 of the Revised Statutes of Missouri, 1939, as amended Laws of Mo. 1947 Vol. 2, Page 216, Mo.R.S.A. § 9613, provides that after a hearing on a petition for adoption, if the court is satisfied that the allegations of the petition are true and that the minor child sought to be adopted "has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, * * *" and that it is fit and proper that such adoption should be made, a decree shall be entered to that effect.
[9] Section 9616 provides that no person shall surrender custody of a minor child or transfer custody of such child to another *Page 381 
and that such other person shall not take possession or charge of a minor child so surrendered or transferred without first having filed a petition with the Juvenile Court of the county and obtained an order from the court granting such permission. We cannot conceive that this section was intended by the legislature to make such custody as that of John Johnson unlawful. In the first place, Margaret Johnson, the natural mother did not surrender or transfer the custody of her child. She has had the actual and continual custody of it from its birth. It is true that she took it into the home of her husband and that he provided for both her and the child, but the custody that he acquired by virtue of that act on the part of its natural mother could not conceivably be unlawful. In arriving at this conclusion, we receive support from the exhaustive opinion written by Judge Ellison in the case of In re Duren, 355 Mo. 1222, 200 S.W.2d 343, 170 A.L.R. 391. In that case a petition was filed in the Juvenile Division of the Circuit Court of Jackson County praying a decree of adoption of one Stanley Duren, an orphan boy, eight years of age. His mother had died in August, 1943, while living in Douglas County. His father, a resident of Douglas County took the child to St. Louis the latter part of May, 1944. The father was in ill health and the evidence showed it is reasonable to suppose that he thought his death was probable. One of the petitioners was his sister, who lived in Kansas City and the other was her husband. On June 1, 1944, the father called his sister to come to St. Louis and gave her the custody of his child. She took the child to Kansas City, supported it and cared for it until the father died August 21, 1944. The petition for adoption was filed August 31, 1944. A guardian was appointed in Douglas County, August 22, 1944 and the controversy was between the petitioners in Kansas City and the guardian appointed in Douglas County. The main point decided in the case was as to what was the legal residence of the child for the purpose of adoption. It will be noted from the above statement of facts that there had been no application by the petitioners to any Juvenile Court asking for an order permitting them to have the custody of the child.
[10] Here the custody of the child had been given to its aunt and uncle in Kansas City by its father, doubtless with the hope, on the father's part, that he would recover from his illness. Judge Ellison speaking for the court specifically held that Section 9616 had not been violated by this conditional transfer of custody and affirmed the decree of adoption which had been reversed by the Kansas City Court of Appeals. See Mo.App., 195 S.W.2d 745. In that case, actual custody had been conditionally placed in the petitioners in Kansas City but in this case actual and exclusive custody had never been surrendered. The most that could be said is that the petitioner, John Johnson had assumed partial custody of his stepchild. As was said by Judge Ellison in the Duren case, "* * * the welfare of the parents and child should be controlling." [355 Mo. 1222, 200 S.W.2d 350.]
[11] Section 9616 should be construed in harmony with the spirit and purpose of the entire adoption act and in so doing, we arrive at the inevitable conclusion that such custody of the child as was exercised by petitioner John Johnson was lawful and actual for more than nine months before the petition was filed and that failure to obtain a prior order from the Juvenile Court of Newton County would not prevent a legal decree of adoption. The admitted facts in this case would justify the trial court in granting the decree but if he desires to hear further testimony, he may do so. The judgment of dismissal should be reversed and the cause remanded to the circuit court of Newton County for further proceedings in accordance with this opinion. It is so ordered.
[12] BLAIR and McDOWELL, JJ., concur *Page 382