448 P.2d 394

**Norma L. MEYER, a single person; and Michael T. Gottlieb, Appellants,**

v.

**E. L. WARNER and Eleanor Warner, his wife; and Joseph T. Hajtinger and Rose Hajtinger, his wife, Appellees.**

**No. 8579.**

Supreme Court of Arizona.

In Division.

Dec. 6, 1968.

Shimmel, Hill, Kleindienst & Bishop, by Robert C. Hackett, Phoenix, for appellants.

Beer & Polley, by Frank W. Beer, Phoenix, for appellees.

UDALL, Vice Chief Justice:

On March 24, 1958, Michael T. Gottlieb leased a lot on North 7th Street, Phoenix, Arizona, to E. L. Warner and wife for a term of fiteen years commencing September 1, 1958. The rent reserved was $350 per month for the first five years, $400 per month for the second five years, and $450 per month for the last five years. The first six-month period and the last month (totalling $2,550) were payable in advance. The lease also provided that Gottlieb would improve the premises prior to possession by erecting a building thereon, and by blacktopping the entire lot. The premises were to be used for the operation of a cocktail lounge. Heating and cooling equipment, and lighting and plumbing fixtures were to be installed by the lessees. Lessees agreed to pay any tax increases that became effective after the first year's taxes were assessed against the land and the building.

The lease contained the following:

"SALE CLAUSE

"The LESSORS give the LESSEES the first refusal to purchase the demised

property, should they decide to sell same during the term of this lease or any extention (sic) thereof. They will meet any price and terms of a bonafied (sic) offer to lessors to sell."

On July 17, 1958, while the building was being constructed (at a cost of $17,000) Gottlieb and his wife executed a Warranty Deed to an undivided one-half interest in the property to a Mr. and Mrs. Meyer. Lessees were not notified of this conveyance, and, since their rent was paid in advance to March 1, 1959, were unaware of the change in ownership. They took possession of the premises on September 1, 1958, and commenced operating it as a cocktail lounge.

On February 25, 1959, Mr. Meyer notified lessees by letter that he had "purchased a half interest in the above-described property, along with your lease thereto."

On March 1, 1959, lessees commenced paying their rent to Mr. Meyer. Later that year both Mr. Meyer and Mrs. Gottlieb died. Gottlieb, as executor of his wife's estate, pursuant to authority from the probate court, sold his remaining undivided one-half interest in the property to Mrs. Meyer for $19,000 in December 1959. Apparently lessees learned of this conveyance in June of 1960, and in July, of 1960 they notified Mrs. Meyer of their desire to purchase the property. They tendered $19,000 for the second half, and offered to pay the price her husband had paid for the first half. The offer was refused, and lessees filed this action for specific performance against Mr. Gottlieb and Mrs. Meyer.

The trial court ordered specific performance only as to the half interest purchased by Mrs. Meyer on December 2, 1959. Lessees' motion for a new trial was granted, and, at the second hearing, the court ordered specific performance as to both halves of the property. From this order, Gottlieb and Mrs. Meyer have appealed.

The trial court made the following pertinent findings of fact and conclusions of law:

*"Findings of Fact*

"5. On July 17, 1958, Gottlieb and wife executed a Warranty Deed conveying an undivided one-half interest in the property to Ray J. Meyer and his wife, Norma L. Meyer, the defendant herein, for a consideration of $2,000.

\* \* \* \* \* \*

"8. On December 2, 1959, Michael T. Gottlieb, individually and as Executor of his deceased wife's estate, sold said property in its entirety to Norma L. Meyer for a consideration of $19,000.00.

\* \* \* \* \* \*

"11. $21,000 is the total amount paid for said property.

"12. Upon the refusal of Norma L. Meyer to accept the tender of the plaintiffs of the purchase price, made in July 1960, plaintiffs were forced to and did retain the services of attorneys of the reasonable value of $5,750.

"CONCLUSIONS OF LAW

"1. The transactions between the Gottliebs and the Meyers concerning the leased premises constituted a bona fide sale, subject to the sales clause of the lease dated March 24, 1958.

"2. The plaintiffs are entitled to a judgment decreeing specific performance of the sales clause of the lease dated March 24, 1958, with $21,000.00 as the purchase price.

"3. The plaintiffs are entitled to judgment for attorney fees of $5,750 and costs expended in enforcing the provisions of the lease dated March 24, 1958.

"4. The plaintiffs are entitled to judgment for the amount paid by them to the defendant since her refusal of their tender of the purchase price, less the amounts paid by the defendant for insurance and taxes since her refusal of the tender."

At the second trial the matter was presented on the record of the first trial. The court heard no testimony. We are not bound by the trial court's findings when

the evidence upon which the findings are based is entirely documentary. De Santis v. Dixon, 72 Ariz. 345, 236 P.2d 38, 44 A.L.R.2d 513 (1951); Arizona Central Credit Union v. Holden, 6 Ariz.App. 310, 432 P.2d 276 (1967); Goodman's Markets, Inc. v. Ward, 4 Ariz.App. 456, 421 P.2d 538 (1966).

The basis of the suit is the clause in the lease giving the lessee the "first refusal to purchase the demised property." Under this provision the lessor must offer the premises to the lessee before selling it to others. A provision of this nature is generally incorporated into a lease for the purpose of protecting the tenant's interest in the continued possession of the premises, and to encourage the tenant to make improvements he might not otherwise make. Gilbert v. Von Kleeck, 284 App. Div. 611, 132 N.Y.S.2d 580 (1951). A first refusal clause differs somewhat from an option. In the case of an option to purchase, the optionee generally has the right to purchase the premises at a set price during all or a part of the term of the lease. A first refusal clause merely requires the lessor, when and if he desires to sell the premises, to first offer them to the lessee at the same price offered by the third person. If the lessee refuses to meet the bona fide offer, the lessor can then sell the premises to the offeror. 51C C.J.S. Landlord & Tenant § 88. The lessor must give some notice to the lessee of his intention to sell and the terms of the offer. Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320 (1947); Anderson v. Stewart, 149 Neb. 660, 32 N.W.2d 140, 3 A.L.R.2d 250 (1948); Cummings v. Nielson, 42 Utah 157, 129 P. 619 (1912).

In the event the lessor fails to notify the lessee of his intention to sell the leased premises, and conveys the premises to a third person, the lessee's remedy is either an action for damages or for specific performance. Abdallah v. Abdallah, 359 F.2d 170, 17 A.L.R.3d 967 (1966); Cortese Restaurant v. Connors, 1 N.Y.S.2d 265, 152 N.Y.S.2d 265, 135 N.E.2d 28 (1956). The

court may order the purchaser to reconvey the property to the vendor, L. E. Wallach, Inc. v. Toll, 381 Pa. 423, 113 A.2d 258 (1955), or order the purchaser to convey the property to the lessee. Barling v. Horn, Mo., 296 S.W.2d 94 (1956).

## FIRST TRANSFER

Gottlieb and Mrs. Meyer argue that the transfer of an undivided one-half interest in the property on July 17, 1958, was not a "sale" within the contemplation of the sale clause in the lease and that the option did not apply. In view of the applicable law we need not decide this question.

In February 1959, as previously stated, lessees received notice from Meyer that the latter had purchased a half interest in the property. No attempt was made by lessees to exercise their rights under the sale clause until sixteen months later, in July of 1960, when they learned of the second transfer of an undivided half interest to Mrs. Meyer.

Specific performance, being an equitable action, must be promptly asserted unless there are circumstances which excuse prompt action. Abdallah v. Abdallah, supra; Unatin 7-Up Co. v. Solomon, 350 Pa. 632, 39 A.2d 835, 157 A.L.R. 1304 (1944). In Barr v. Petzhold, 77 Ariz. 399, 273 P.2d 161 (1954), we said·

"This court recognizes as meritorious the defense of laches. The general rule is that a plaintiff must exercise diligence and avoid unreasonable delay in prosecuting an action."

In order for a cause to be barred by laches there must be a lack of diligence on the part of the plaintiff, and injury or prejudice to the defendant due to such lack of diligence. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964); Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963).

The record does not indicate any circumstances which excused lessees from promptly asserting their right to purchase the undivided half interest acquired by the

Meyers in July 1958. Upon learning of the sale from Meyer's letter in February 1959 lessees should have notified the Meyers, within a reasonable time, of their desire to purchase. Sixteen months is not a reasonable time. The testimony of the appraiser indicated that the property was appreciating rapidly. Lessees could not equitably sit back and wait for the land to increase in value before deciding whether to purchase it.

Lessees argue that since Mrs. Meyer and Mr. Gottlieb failed to plead laches in their answer they cannot raise the defense on appeal. We disagree. Laches was argued in the trial brief, and evidence supporting the defense was presented at the trial without objection by lessees. Rule 15(b), Rules of Civil Procedure, 16 A.R.S. provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. * * *"

See also, In re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966); O'Malley Investment and Realty Co. v. Trimble, 5 Ariz.App. 10, 422 P.2d 740 (1967); Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334 (1954).

We hold that the trial court erred in ordering specific performance as to the half interest transferred in July 1958.

## SECOND TRANSFER

The transfer of the second undivided one-half interest from Gottlieb to Mrs. Meyer was made by Gottlieb acting as the executor of his wife's estate. The Order for Confirmation of Sale of Real Property, dated January 11, 1960, states:

"That, at said sale, Norma L. Meyer, a widow, became the purchaser of said real property for the sum of Nineteen Thousand Dollars ($19,000.00) cash, said purchaser being the highest and best bidder and said sum being the highest and best bid received by said Executor; and it appearing that it is to the best interest of said estate to sell said real property and that the price offered is not disproportionate to the value of said real property and that a greater sum cannot be obtained for said property * * *."

Gottlieb and Mrs. Meyer argue that the above transfer was not a "sale" within the provisions in the lease because Gottlieb sold the property simply to provide Mrs. Meyer with a nice income for the remaining years of her life. The transfer may well have been a gesture of friendship but we fail to see how it is any less a sale. There appears to be no dispute that $19,000.00 was the price paid by Mrs. Meyer. Therefore we uphold the finding of the trial court (Number 8, supra) that the transaction was a sale for a consideration of $19,000.00.

## ATTORNEY'S FEES

The lease made provision for the recovery of reasonable attorney's fees by a party to the lease should he have to institute an action to enforce it. The trial court awarded lessees the amount of $5,750 for attorney fees. In view of the fact that specific performance will be ordered as to only half the property involved, the trial court is hereby directed to reconsider the issue of attorney fees, and make a determination as to the amount that should be awarded.

We reverse this matter and remand it to the trial court with orders to proceed in conformity with this opinion. The court will fix the amount lessees are to pay for the half interest by adding to the sum of $19,000 any amounts expended by Mrs. Meyer for property taxes, insurance, and upkeep on the premises, subsequent to July 1, 1960, and deducting one-

half of the rent paid by lessees subsequent to July 1, 1960. Interest at the legal rate will be charged lessees on the amount of $19,000 plus the taxes, insurance, and upkeep paid by Mrs. Meyer, after July 1, 1960, crediting lessees with interest on one-half of each monthly rental payment made after that date.

STRUCKMEYER and LOCKWOOD, JJ., concur.